1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11    FARM AND TRADE, INC.,                    No. 2:14-cv-00415-MCE-CMK

12                  Plaintiff,

13          v.                                 **MEMORANDUM AND ORDER**

14    FARMTRADE, LLC, a North Carolina
      limited liability company, and DOES 1
15    through 25, inclusive,

16                  Defendants.

17

18          Plaintiff Farm and Trade, Inc. ("Plaintiff") has filed a Second Amended Complaint

19    ("SAC") (ECF No. 29) alleging trademark infringement and related claims against

20    Defendant Farmtrade, LLC ("Defendant").  Presently before the Court is Defendant's

21    Motion to Dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF

22    No. 30).[1]  For the reasons that follow, Defendant's Motion to Dismiss is denied.[2]

23    ///

24    ///

25    ///

26    _____

27          [1] All subsequent references to "Rule" are to the Federal Rules of Civil Procedure.

28          [2] Because oral argument would not have been of material assistance, the Court ordered this
      matter submitted on the briefs.  See E.D. Cal. Local R. 230(g).

1

BACKGROUND[3]

### A. Plaintiff

Plaintiff has been using the trade name and service mark "Farm and Trade" ("Mark") in commerce since June 2003, and has used the Mark continuously in commerce since Plaintiff's incorporation in July 2004.  Since July 2004, Plaintiff has exclusively used the Mark to identify its international crop brokerage services and related advisory/consulting services pertaining to commodity crop (primarily rice) trading and exporting.  Plaintiff acts as a buyer, broker, and consultant to rice growers in California and around the world.  According to Plaintiff, the Mark has become publicly associated exclusively with Plaintiff and has become so closely associated with Plaintiff that Plaintiff has developed appreciable goodwill and industry-wide name recognition based on the Mark.  Plaintiff therefore claims it has established protectable common law trademark rights flowing from its use of the Mark.

Plaintiff is also well known in the rice and commodity trading industry generally. For example, Plaintiff's October 2013 acquisition of California Rice Exchange was well-publicized in the commodity industry.  Moreover, Plaintiff is active and involved in the rice and food commodity industries and is an active participant in state and federal commissions.  Specifically, Plaintiff publishes a monthly Farm and Trade Report, which has a circulation of over 1500 electronic and 500 paper copies.  When redistribution patterns are taken into account, Plaintiff estimates that its Report is seen by over 5,000 readers in California and several hundred in other parts of the country.  Plaintiff also publishes The Rice Trader, a weekly market analysis bulletin devoted to rice, and until recently published Rice Today, which was sent by direct mail to 35,000 readers. Plaintiff's rice market publications are widely respected as authoritative in its field, and Plaintiff is widely considered to be an international rice industry leader.  According to Plaintiff, these publications have created mental recognition in the minds of consumers

---

[3] The following statement of facts is based on the allegations in Plaintiff's SAC.

1   and substantial consumer awareness of Plaintiff's services, such that Plaintiff is widely

2   recognized as the exclusive purveyor of goods under the Mark.

3        Plaintiff also sponsors and hosts national and international conferences that

4   feature world-renowned rice industry leaders, decision makers, and research experts.

5   Additionally, through its affiliate ICI, Plaintiff offers a fully integrated media source

6   connecting clients to all critical aspects of the rice industry, including research, analysis,

7   conferences, and trading.

8        Plaintiff has actual and potential consumers of its services worldwide, and has

9   achieved a strong degree of consumer recognition through these efforts.  Plaintiff's

10  annual gross revenues have averaged approximately $5 million over the past five years

11  and are projected to reach $100 million this year.  These revenues reflect, in part,

12  Plaintiff's goodwill and name recognition in the Mark.

13       Since its inception, Plaintiff has spent well over $1 million advertising and

14  marketing the Mark in the form of advertisement placements, online promotions, printed

15  and digital publications, personal meetings with growers, and industry conferences.  As a

16  further part of its commitment of funds and resources to promoting and controlling use of

17  the Mark, Plaintiff owns and controls a host of internet domain names, many of which are

18  used to enhance search engine optimization associated with online searches related to

19  the Mark, including but not limited to "FARMANDTRADE.COM,"

20  "FARMANDTRADE.BIZ," "FARMANDTRADE.INFO," "FARMANDTRADE.NET,"

21  "FARMANDTRADE.ORG," and "FARMANDTRADE.US."

22       **B. Defendant and the Dispute**

23       Defendant currently operates an online trading floor for agricultural chemicals at

24  XSAg.com, which is identified by the URL www.xsag.com and derivations thereof.

25  Defendant promotes XSAg.com as "A Farmtrade™ Company."  Defendant filed its

26  articles of organization in North Carolina on December 14, 2012, then under the name

27  FarmTrader, LLC.  On February 7, 2013, Defendant changed its name to "FarmTrade,

28  LLC" ("Accused Mark").  In May 2013, Defendant filed an application for federal

3

1   registration of the Accused Mark.  In support of its application for registration, Defendant

2   represented to the United States Patent and Trademark Office ("USPTO") its intent to

3   use the Accused Mark in commerce; by public press releases and online

4   announcements, Defendant has used and continues to use the mark in commerce in an

5   attempt to build consumer name recognition in the Accused Mark.  Plaintiff alleges

6   Defendant is infringing on Plaintiff's rights in the Mark by causing potential and actual

7   confusion among consumers.

8          On December 10, 2013, the USPTO issued a Notice of Allowance assigning the

9   Accused Mark serial number 85931184.  Plaintiff did not discover Defendant's

10  application for registration until after the Notice of Allowance was issued, when Plaintiff

11  received an online announcement that Defendant would change the name of its website

12  from "XSAg.com" to "Farmtrade."

13         After learning of Defendant's intent to use the name, Plaintiff contacted Defendant

14  by e-mail on December 17, 2013, and formally demanded that Defendant cease and

15  desist using the Accused Mark.  Plaintiff informed Defendant that Plaintiff had already

16  experienced multiple instances of customer confusion—that is, according to Plaintiff,

17  "customers mistaking Defendant for Plaintiff or Plaintiff's affiliate."  ECF No. 15 ¶ 27.

18  Plaintiff elaborates on this allegation in its SAC:

19              Plaintiff received several telephone calls after the
                December 10, 2013 announcement asking if www.xsag.com
20              was Plaintiff's company based upon the proposed name
                change.  One of Plaintiff's customers forwarded the press
21              release to Plaintiff on December 11, 2013, after the two
                discussed the issue over the telephone. Shortly after learning
22              of Defendant's announcement and receiving the
                aforementioned phone calls expressing customer confusion,
23              Plaintiff contacted Defendant . . . .

24         Plaintiff alleges that Defendant has done nothing to address Plaintiff's complaints

25  and has taken no action to remedy the actual or probable consumer confusion caused

26  by Defendant's use of the Accused Mark.

27  ///

28  ///

4

1

**STANDARDS**

2

3    **A.  Rule 12(b)(6)**

4         On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all

5    allegations of material fact must be accepted as true and construed in the light most

6    favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38

7    (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and plain statement of the claim

8    showing that the pleader is entitled to relief," in order to "give the defendant fair notice of

9    what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp. v. Twombly,

10   550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A

11   complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual

12   allegations; however, "a plaintiff's obligation to provide the grounds of his entitlement to

13   relief requires more than labels and conclusions, and a formulaic recitation of the

14   elements of a cause of action will not do."  Id. (internal quotation marks and citations

15   omitted).  A court is not required to accept as true a "legal conclusion couched as a

16   factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly,

17   550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief above the

18   speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R.

19   Miller, Federal Practice and Procedure § 1216 (3d ed. 2004).

20        Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket

21   assertion, of entitlement to relief."  Twombly, 550 U.S. at 556 n.3 (internal quotation

22   marks and citation omitted).  Thus, "[w]ithout some factual allegation in the complaint, it

23   is hard to see how a claimant could satisfy the requirements of providing not only 'fair

24   notice' of the nature of the claim, but also 'grounds' on which the claim rests."  Id. (citing

25   5 Charles Alan Wright & Arthur R. Miller, supra, at § 1202).  A pleading must contain

26   "only enough facts to state a claim to relief that is plausible on its face."  Id. at 570.  If the

27   "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible,

28   their complaint must be dismissed."  Id.  However, "a well-pleaded complaint may

5

1    proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and

2    'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes,

3    416 U.S. 232, 236 (1974)).

4         **B.  False Designation of Origin**

5              Any person who, on or in connection with any goods or
6              services . . . uses in commerce any . . . name, symbol, or
              device, or any combination thereof . . . which . . . is likely to
7              cause confusion, or to cause mistake, or to deceive as to . . .
              the origin, sponsorship, or approval of his or her goods,
8              services, or commercial activities by another person . . . shall
              be liable in a civil action by any person who believes that he
9              or she is or is likely to be damaged by such act.

10   15 U.S.C. § 1125(a).

11

12                                   **ANALYSIS**

13

14        Defendant argues that the Court should dismiss Plaintiff's claim for false

15   designation of origin because the SAC "fail[s] to allege any facts that establish likelihood

16   of confusion."  Def.'s Mot. at 10, Dec. 29, 2014, ECF No. 31.  As the Ninth Circuit has

17   explained:

18            The "likelihood of confusion" inquiry generally considers
             whether a reasonably prudent consumer in the marketplace
19            is likely to be confused as to the origin or source of the goods
             or services bearing one of the marks or names at issue in the
20            case.  To succeed, a plaintiff must show more than simply a
             possibility of such confusion.
21

22   Rearden LLC v. Rearden Commerce, Inc., 683 F.3d 1190, 1209 (9th Cir. 2012) (citations

23   omitted).

24        The Court dismissed Plaintiff's First Amended Complaint because it did not allege

25   sufficient facts to establish a likelihood of confusion.  See Mem. and Order at 11,

26   Nov. 21, 2014, ECF No. 28.  In the SAC, however, Plaintiff added a specific factual

27   allegation that Plaintiff received several telephone calls—including at least one from a

28   customer—asking if Defendant's website was Plaintiff's company.  SAC at 8.  Thus,

                                          6

1    Plaintiff now alleges more than a possibility of confusion, as the SAC describes a

2    specific instance of consumer confusion.  The Court finds that this new allegation

3    nudges Plaintiff's claim across the line from conceivable to plausible, and is therefore

4    sufficient to survive Plaintiff's Motion to Dismiss.  See also Johnson v. City of Shelby,

5    Miss., 135 S. Ct. 346, 347 (2014) (per curiam) (finding complaint satisfied Twombly and

6    Iqbal because it "stated simply, concisely, and directly events that, [plaintiffs] alleged,

7    entitled them to damages from the [defendant]").

8         Defendant further argues that because Plaintiff has not stated a claim for false

9    designation of origin, the Court (1) does not have jurisdiction over Plaintiff's request for a

10   declaratory judgment, and (2) should decline to exercise supplemental jurisdiction over

11   Plaintiff's claims under California's Unfair Competition Law.  Because the Court finds that

12   the SAC adequately states a claim for false designation of origin, the Court has

13   jurisdiction over Plaintiff's request for a declaratory judgment.  Additionally, because this

14   Court has original jurisdiction over Plaintiff's false designation of origin claim, the Court

15   has supplemental jurisdiction over Plaintiff's Unfair Competition Law claims under

16   28 U.S.C. § 1367(a).

17

18                                    **CONCLUSION**

19

20        For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Second

21   Amended Complaint (ECF No. 30) is DENIED.

22        IT IS SO ORDERED.

23   Dated:  April 9, 2015

24

25

26   _____

     MORRISON C. ENGLAND, JR., CHIEF JUDGE

27   UNITED STATES DISTRICT COURT

28